IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARIELL GLAZE, | ) | CASE NO. 1:19 CV 2969 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| | ) | |
| CUYAHOGA COUNTY, OHIO, et al., | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion to Partially Dismiss Second Amended Complaint filed by Defendants, Cuyahoga County, Damein Bodeker and Deleonte Brown. (Docket #9.)

I.  Factual Allegations and Procedural History.

As alleged in the Complaint, the facts of this case are follows:

Plaintiff, Chariell Glaze, was incarcerated in the Cuyahoga County Corrections Center ("the County Jail") and scheduled to be released on November 27, 2017. (Second Amended Complaint at Paragraph 8.) On the day of his scheduled release, Mr. Glaze inquired regarding the status of his release paperwork. The Night Shift Officer indicated he would leave a message for the Floor Officer on the next shift, Defendant Deleonte Brown ("Officer Brown"). (Id. at Paragraph 9-11.) Mr. Glaze later asked Officer Brown about his scheduled release. Officer Brown confirmed that he received the message and would "get in touch" with the Booking Department. (Id.)

Shortly thereafter, Mr. Glaze's "pod" was placed on "red zone" due to overcrowding and understaffing, forcing all inmates to return to their cells. (Id. at Paragraph 12.) Fearing the "red zoning" would delay his release, Mr. Glaze states that he asked Officer Brown to call the Booking Department, but alleges that Officer Brown dismissed his request. (Id. at Paragraph 13.) Mr. Glaze then asked the Corporal be called to address the situation, hoping the Corporal would contact the Booking Department to ensure an on-time release despite the "red zone." (Id. at Paragraph 15.)

The Corporal, Defendant Damein Bodeker ("Officer Bodeker"), responded and Mr. Glaze presented a Journal Entry showing his November 27, 2017 release date. Mr. Glaze asked Officer Bodeker to check on the status of his release. (Id. at Paragraph 16.) Mr. Glaze states that Officer Bodeker asked him to step into the vestibule between the pod and the elevators, and he complied. (Id.) Mr. Glaze alleges that Officer Bodeker did not attempt to resolve the situation peacefully, or address Mr. Glaze's scheduled release, but instead said, "I should dump you and spray you right now." (Id. at Paragraph 17.) Mr. Glaze alleges that Officer Bodeker then "initiated physical contact with Mr. Glaze while Mr. Glaze stood with his hands up in the air, grabbing him by the collar of his shirt and emptying a can of pepper foam into his face from an unsafe distance." (Id. at Paragraph 18.) Mr. Glaze states he was coughing and gasping for air. Mr. Glaze alleges that Officers Bodeker and Brown led him from the vestibule and intentionally walked him into a metal door, causing him a broken tooth and cuts to his face and lips, and that the pepper spray seeped into the cuts causing an "unbearable burn." (Id. at Paragraph 27.)

Mr. Glaze alleges that Officer Brown then summoned the Special Response Team ("SRT") Officers, who "wear black paramilitary garb and are known for their proclivity for violence," reporting "an assault on an officer." (Id. at Paragraphs 28-29.) Mr. Glaze denies

assaulting anyone. (Id. at Paragraph 29.) The SRT Officers "arrived and roughly strapped [Mr. Glaze] into a restraint chair," which left "belt marks on his waist" when he was eventually released from the chair hours later. (Id. at Paragraph 30.) Mr. Glaze alleges the Officers mocked and laughed at him and placed him in a face mask when he attempted to spit out the foam from his mouth caused by the pepper spray, further exacerbating his pain and difficulty breathing. (Id. at Paragraphs 35-36.)

Mr. Glaze alleges the SRT Officers ineffectively decontaminated him to prolong the effects of the pepper spray, placing him in a closet referred to as the "slop room" and spraying him with water for a few seconds, rather than using any type of soap or cleaning solution to effectively remove the pepper spray residue. (Id. at Paragraphs 37-40.) Mr. Glaze states that prior to being transported to the restraint chair, his request to use the restroom was refused, and that "he remained in the restraint chair for approximately three hours without water, a shower, new clothes, or access to a restroom, despite being fully compliant and there being no reason to keep him tied to a chair." (Id. at Paragraphs 41-42.) Mr. Glaze alleges that he repeatedly begged the Officers who would pass by performing required "checks" to loosen the restraint chair straps and allow him to use the restroom. (Id. at Paragraph 43.) They refused and Mr. Glaze eventually urinated on himself. (Id.) Mr. Glaze states that he "sat in the chair in the frigid isolated observation room, crying, drenched in pepper foam and urine" and that Officers told him "the more noise you make, the longer you'll be in here." (Id.)

After approximately three hours, Mr. Glaze states that he was "wheeled from the isolation room into a segregation cell." (Id. at Paragraph 44.) He was released from the chair and spent the next 3 days in the segregation cell. (Id.) He was not permitted to shower and was denied soap, clean clothing and clean bedding. (Id. at Paragraph 45.) Mr. Glaze states he was then

moved to disciplinary isolation for five days. (Id. at Paragraph 46.) Mr. Glaze left the County Jail on December 7, 2017, when officials from Arkansas transported him from the County Jail to Arkansas because of an outstanding warrant for an alleged parole violation. During the events in question, Mr. Glaze had not been informed that he would be transferred to Arkansas upon his release from the County Jail. (Id. at Paragraph 48.)

Mr. Glaze alleges that Officers Bodeker and Brown, along with one or more of the SRT Officers, wore body cameras which would have captured the events in question interactions, had they not been intentionally set in "Buffering Mode," rather than "Event Mode," which ensures the recorded footage will be deleted rather than saved.

**The Complaint.**

Mr. Glaze initially filed his Complaint in the Cuyahoga County Court of Common Pleas on November 26, 2019, naming Cuyahoga County, Damein Bodeker and Masai Brown as Defendants. On December 19, 2019, Mr. Glaze filed a First Amended Complaint in the Cuyahoga County Court, replacing Masai Brown with Deleonte Brown. The case was then removed by all Defendants, including Deleonte Brown, to this Court on December 26, 2019. All Defendants, including Deleonte Brown, filed an Answer on December 31, 2019. Mr. Glaze filed a Second Amended Complaint in this Court on February 24, 2020.

Mr. Glaze raises the following claims: Claim 1 – Eighth or Fourteenth Amendment Violation Under 42 U.S.C. § 1983 for a Custom, Policy, Pattern, or Practice Tolerating the Use of Excessive Force against Cuyahoga County; Claim 2 – Fourteenth Amendment Violation Under 42 U.S.C. § 1983 for Deliberate Indifference/Failure to Train and Supervise Corrections Officers against Cuyahoga County; Claim 3 – Eighth or Fourteenth Amendment Use of Excessive Force under 42 U.S.C. § 1983 against Officers Bodeker and Brown; Claim 4 – Civil

Liability for Criminal Acts Under Ohio Rev. Code § 2307.60 against Officers Bodeker and Brown; Claim 5 – Reckless Hiring, Training, Supervision, Discipline, Staffing, and Retention against Cuyahoga County; and, Claim 6 – Destruction of Public Records Under Ohio Rev. Code § 149.351 against Cuyahoga County.

Mr. Glaze alleges that Officer Bodeker's use of pepper spray in an abusive and retaliatory manner, causing injury, along with the alleged use of buffering mode and/or the failure to activate body-worn cameras thereby ensuring the destruction of relevant audio and visual evidence, are consistent with the customs, policies, patterns and practices of the County. Mr. Glaze alleges that the County has a custom, policy, pattern or practice of permitting Corrections Staff to use unjustified and unnecessary force on people in custody without any real consequences.

**Defendants' Partial Motion to Dismiss.**

On March 9, 2020, Defendants filed a Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(h)(3). (Docket #9.) Defendants argue that Mr. Glaze's claim for Civil Liability for Criminal Acts against Officers Bodeker and Brown is subject to a one-year statute of limitations and must be dismissed as untimely; that Mr. Glaze's Constitutional claim brought pursuant to 42 U.S.C. § 1983 against Officer Brown must be dismissed because Officer Brown was named and served in this action beyond the expiration of the two-year statute of limitations; that Mr. Glaze lacks standing to pursue, and the Court lacks subject matter jurisdiction to enter, any form of injunctive or declaratory relief against any Defendant; that to the extent Mr. Glaze raises official capacity claims against Officers Bodeker and Brown, said claims must be dismissed as duplicative of his claims against Cuyahoga County; and, that Mr. Glaze's claim for violation of the Ohio Public Records Act must be severed and remanded for lack of subject-

-5-

matter jurisdiction.

Mr. Glaze filed his Response Brief on April 6, 2020. (Docket #12.) Defendants filed their Reply Brief on April 20, 2020. (Docket #15.) Defendants' Motion is fully briefed and ripe for review.

**II.    Standard of Review**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. Ohio 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. Ky. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. Tenn. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 548, at *2 (6th Cir. Ohio Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. Ohio 2001). It is with this standard in mind that the instant Motion must be decided.

In addition to the foregoing, Fed. R. Civ. P. 12(h)(3) provides that if at any time the Court determines it lacks subject matter jurisdiction, the action must be dismissed.

### III. Discussion.

#### A. Civil Liability for Criminal Acts, Ohio Rev. Code § 2307.60.

Ohio Rev. Code § 2307.60(A)(1) provides, "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code."

"[C]laims brought under O.R.C. § 2307.60(A)(1) are subject to a one-year statute of limitations, because the statute '"contemplates a penalty."'" *Marquardt v. Carlton*, Case No. 1:18 CV 333, 2019 U.S. Dist. LEXIS 58402, *6-7 (N.D. Ohio Apr. 2, 2019)(citing *State ex rel. Cty. of Cuyahoga v. Jones Lang Lasalle Great Lakes Co.*, 2017 Ohio 7227, 131 (8th Dist. Ohio Ct. App. 2017); *Gray v. Newman*, 2008 Ohio 1076, 26 (8th Dist. Ohio Ct. App. 2008)); see also *Steinbrick v. Cleveland Elec. Illuminating Co.*, Case No. 66036, 1994 Ohio App. LEXIS 3756, *5 (8th Dist. Ohio Ct. App. 1994)). The criminal conduct alleged in the Complaint occurred no later than December 7, 2017, when Mr. Glaze left the County Jail. Mr. Glaze's Complaint in this case was

filed on November 26, 2019. Accordingly, Mr. Glaze's claim for Civil Liability for Criminal Acts is barred by the one-year statute of limitations.

### B.  Timeliness of Mr. Glaze's Constitutional Claim Against Deleonte Brown.

Fed. R. Civ. P. 15(c), entitled "Relation Back of Amendments," provides in pertinent part as follows:

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
> * * *
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(b) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed R. Civ. P. 4(m) allows 90 days to serve the summons and complaint.

In his original Complaint, filed in the Cuyahoga County Court of Common Pleas on November 26, 2019, Mr. Glaze mistakenly named Corrections Officer Masai Brown as a defendant, rather than Officer Deleonte Brown. Mr. Glaze states that this was an "honest mistake in identifying which Corrections Officer with the surname 'Brown' was involved in the attack." (Docket 12 at p. 8.) The Complaint was amended three weeks later, on December 19, 2019, to correct the error. On December 26, 2019, Defendants, including Deleonte Brown, filed their Notice of Removal and, on December 31, 2019, filed their Answer.

The original Complaint was amended to change and correctly identify Deleonte Brown as the Corrections Officer involved in the events giving rise to the Complaint, removing Masai Brown who was incorrectly named and not involved. Mr. Glaze's lawsuit was served within the 90-day time period set forth in Fed. R. Civ. P. 4(m); the amendment was made soon after the Complaint was filed; and all Defendants, including Deleonte Brown, removed the case following the amendment and filed an answer. Deleonte Brown received notice of this action; there is no evidence that his ability to defend this action was prejudiced in any way; and, all Defendants, including Deleonte Brown, knew or should have know that but for a mistake, he would have been named in the lawsuit when initially filed. Accordingly, the requirements of Rule 15(c)(1)(C) have been met and the amendment relates back to the filing of the initial Complaint. Mr. Glaze's Constitutional Claim against Deleonte Brown is not time-barred.

    **C.**    **Standing to Pursue Injunctive or Declaratory Relief for Constitutional Violations.**

The doctrine of standing "ensures that the plaintiff has a 'personal stake in the outcome of the controversy' at the outset of the litigation." *Williams v. City of Cleveland*, 907 F.3d 924, 933 (6th Cir. 2018)(quoting *Baker v. Carr*, 369 U.S. 186 (1962).) In order to establish standing to seek declaratory or injunctive relief based on prospective harms, the threat of a prospective injury must be immediate and not premised upon past injuries alone. *Barber v. Miller*, 809 F.3d 840, 849 (6th Cir. Mich. 2015); *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th Cir. Tenn. 2014). "Past exposure to illegal conduct . . . unaccompanied by any continuing, present adverse effects," will not suffice to establish "a present case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)(quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

The allegations set forth in the Second Amended Complaint relate to a single episode of

past misconduct in November 2017. Former inmates lack standing to seek declaratory or injunctive relief based on alleged Constitutional violations that occurred during their incarceration where there is no threat of future harm. *Sumpter v. Wayne Cty.*, 868 F.3d 473, 491 (6th Cir. Mich. 2017); *Williams v. City of Cleveland*, 907 F.3d 924, 933-34 (6th Cir. Ohio 2018); see also *Lyons*, 461 U.S. 95, 102; *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 95 F. Supp. 2d 723, 732 (N.D. Ohio 2000). Accordingly, Mr. Glaze's claims for injunctive and declaratory relief must be dismissed.

   **D.** **Official Capacity Claims Against Defendants Bodeker and Brown.**

Mr. Glaze did not respond to Defendants' argument that his official capacity claims against Officers Bodeker and Brown should be dismissed. "Official capacity suits 'represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hoffman v. O'Malley*, Case No. 1:18 CV 309, 2019 U.S. Dist. LEXIS 18355 (N.D. Ohio Feb. 5, 2019)(quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Glaze has named and served Cuyahoga County as a Defendant in this action. Accordingly, his official capacity claims against Officers Bodeker and Brown are hereby dismissed.

   **E.** **Ohio Public Records Act Claim.**

Ohio Rev. Code § 149.351 prohibits the destruction or disposal of public records. Mr. Glaze alleges that video footage of the events giving rise to this lawsuit was destroyed. The Court has supplemental jurisdiction over Mr. Glaze's Public Records Act Claim 28 U.S.C. § 1367(a); the claim is linked directly to Mr. Glaze's civil rights claims and derives from a

common nucleus of operative fact; and, permitting the claim to proceed in this Court serves the interests of judicial economy. The Court finds no basis upon which abstention under *Burford v. Sun Oil Co.*, 319 U.S. 314 (1943), is necessary, given the fact that resolution of Mr. Glaze's claim requires a straightforward analysis of the evidence and application of long-standing State law. Accordingly, Defendants' request that the Court decline to exercise supplemental jurisdiction over, or abstain from hearing, Mr. Glaze's Public Records Act Claim is hereby denied.

### IV. Conclusion.

As set forth above, Defendants' Motion to Dismiss (Docket #9) is hereby granted in part and denied in part.

The Court hereby dismisses Mr. Glaze's claim for Civil Liability for Criminal Acts; his claims for injunctive or declaratory relief; and, his official capacity claims against Officers Bodeker and Brown.

The remainder of Defendants' Motion to Dismiss is denied.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

DATED: *September 11, 2020*